**SO ORDERED.**

**SIGNED this 03 day of August, 2006.**

_____
**LARRY E. KELLY
UNITED STATES CHIEF BANKRUPTCY JUDGE**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| IN RE: § | | |
| DIAN MARIA JONES, § | | CASE NO. 05-63122-LEK |
| Debtor. § | | Chapter 7 |

| | | |
|---|---|---|
| § | | |
| DIAN MARIA JONES, § | | |
| Plaintiff, § | | |
| § | | |
| v. § | | ADVERSARY NO. 06-6006 |
| § | | |
| BANK ONE TEXAS, EDFINANCIAL § | | |
| SERVICES, EDUCATIONAL CREDIT § | | |
| MANAGEMENT CORP., NELNET, § | | |
| NORTH TEXAS HIGHER EDUCATION § | | |
| AUTHORITY, TEXAS GUARANTEED § | | |
| STUDENT CORPORATION, AND § | | |
| WELLS FARGO STUDENT LOANS, § | | |
| Defendants. § | | |

**MEMORANDUM OPINION**

On July 11, 2006 the Court conducted a trial in the above styled adversary proceeding. In this suit, the Plaintiff Debtor, Dian Maria Jones ("Plaintiff Jones" or "Plaintiff") seeks to receive a hardship discharge under 11 U.S.C. § 523(a)(8) of approximately $49,858 in student

1

loan debt that she alleges is owed Bank One Texas and Nelnet (total of $37,445) and North Texas Higher Education Authority, Wells Fargo Student Loans, and Edfinancial (total of $12,412). Texas Guaranteed Student Loan Corporation ("TGSLC") intervened in this suit. Educational Credit Management Corporation ("ECMC") substituted in place of Nelnet. The parties agreed that only TGSLC and ECMC currently hold the debt at issue in this suit and are, thus, the only two defendants in this suit.

At trial, Plaintiff appeared, representing herself pro se. Attorneys for Defendants ECMC and TGSLC appeared.

This is a core proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(b)(2)(I). After considering all of the evidence received at the trial, as well as the pleadings on file, the following represents the Court's findings of fact and conclusions of law made pursuant to Bankruptcy Rule 7052 and Federal Rule of Civil Procedure 52.

Background

Plaintiff Jones filed a no asset chapter 7 bankruptcy case on October 14, 2005. By this suit, she is attempting to stop collection of the student loan debt she incurred. Specifically, she asks the Court to enter declaratory judgment that the student loan debt is dischargeable under 11 U.S.C. § 523(a)(8). Plaintiff Jones asserts that she meets the requirements set by case law to have the debt held dischargeable: 1) it is an undue hardship for her to pay the debt because she has no job and no income other than assistance from various governmental entities and she has no assets; 2) she has a minor dependent; and 3) this situation has continued and will continue into the future–her financial situation is not going to change because she will be approximately 50 years old by the time she should complete her planned nursing program, leaving her a limited number of years remaining of productive work life. In other words, she argues that, if she is required to repay the debts, she will be placed in a position of undue hardship because she will not be able to maintain a minimal standard of living.

The Defendants argue that Plaintiff has the burden of proof to show the requirements set by case law to have the debts held nondischargeable. They assert she cannot support this burden of proof. None of the parties dispute the material facts surrounding the creation or repayment of the student loan debts at issue.

During trial, Plaintiff Jones admitted into evidence Exhibits 1 through 24. Defendant

ECMC admitted into evidence Exhibits A through H. Defendant TGSLC did not admit any exhibits into evidence. Plaintiff Jones testified on direct and cross-examination. All parties presented argument for and against the hardship discharge request.

Findings of Fact

1.  Plaintiff Jones, age 48, is a divorced mother of one minor children who lives with her.
2.  Plaintiff received a G.E.D. diploma from high school. She is a full-time student at Temple College taking prerequisite courses for admission to the nursing program at Temple College. If accepted to the nursing program, it will take her approximately two years to complete this program.
3.  Plaintiff's residency is limited to Bell County, Texas due to a county restriction ordered in the custody decision pertaining to the dependent child as part of Plaintiff's divorce.
4.  According to Plaintiff's testimony, as of November 2005, she began receiving a Social Security child's benefit of $459 per month (which increased to $478 per month in June 2006 due to a cost of living increase). With her receipt of the child's benefit, she no longer receives a $225 child support payment from the ex-husband. According to Social Security regulations, Plaintiff is only to use the child's benefit for the child and must deposit any unused funds per month in a savings account. She cannot use this money for her education.
5.  According to Plaintiff's testimony, she receives $429 per month in Section 8 Rental housing assistance which is paid directly to her landlord. Additionally, she pays approximately $71 per month toward the housing expense. From Hill Country Community Action, Plaintiff receives some assistance with one utility bill, although she pays a co-pay amount; she receives one tank of gasoline for her car per week while she is attending college; and she receives some help with school books if there is money available. She receives health care through Bell County Indigent Health Care. She receives $213 per month in food stamps.
6.  Plaintiff drives a 1996 Chevy Lumina with approximately 128,000 miles.
7.  She has normal and reasonable expenses. She allows herself and her son approximately $40.00 for internet service and movie rentals per month, her only "luxury" expense.
8.  Her current income is below the poverty level guideline of $13,200 for a household of two published in the Federal Register Vol. 71, No. 15, January 24, 2003, pages 3848-3949.

Plaintiff's Exhibit 7.

9. For college tuition expenses, she will receive a Pell Grant for 2006-07 but no SEOG program money. She estimates her tuition for the year 2006-07 to be $2263 for 12-13 hours, plus $1000 for books, and she will have approximately $418 remaining after payment of tuition and books from her Pell Grant.

10. Plaintiff had no earnings in 2005.

11. Plaintiff has not worked since she married in 1999. She worked before marriage and, at the time she exited the workforce, she held what can be classified as higher management positions, not entry level or clerical positions.

12. Plaintiff separated from her husband in July 2002. The parties had a trial in their divorce proceeding in November 2003, and a final decree was entered in April 2004. Her ex-husband appealed the decision, and Plaintiff began representing herself at this point. The appeal was dismissed in the spring of 2005.

13. Plaintiff has attended several junior colleges and colleges, including Tulsa Junior College, North Texas State University, and Temple College. She has obtained about 85-90 college credit hours but all are for lower division courses. She still needs several courses to get an associates degree in general studies- a physical education course and a higher level math course. Additionally, Plaintiff testified that she needs to make a "C" in an anatomy and physiology course in order to enter the nursing program, a subject area in which she testified she has struggled.

14. Plaintiff's Schedule F of unsecured debt listed a total unsecured debt of $200,900. Of this amount, she listed a balance of about $45,500 as student loan debt. All of the other unsecured debt was discharged by the discharge order issued on March 1, 2006 in Plaintiff's chapter 7 bankruptcy case.

15. Plaintiff's student loans at issue were made, insured, or guaranteed by a governmental unit, or made under a program funded in whole or in part by a governmental unit or nonprofit institution, or are for an obligation to repay funds received as an educational benefit, scholarship, or stipend, as described in 11 U.S.C. § 523(a)(8).

16. As of the end of June 2006, Plaintiff owes total student loan debt of approximately $50,000, with $4370 owed to ECMC and $45,630 owed to TGSLC. Approximately 9 years have

passed since the last student loan at issue. While in college, she received deferments of the collection of the loans, but the loans continued to accrue interest.

17. The purpose of the loans owed to ECMC was for Plaintiff to attend Tulso Junior College on an HEAF Guaranteed Student Loan dated August 9, 1986 in the amount of $2,500. ECMC Exhibit A. This loan was serviced by Nelnet. ECMC Exhibit D. This loan was assigned by the National Student Loan Program to ECMC. ECMC Exhibit B. The original principal amount has grown, via the accrual of interest, to $4,370.74 as of June 27, 2006. ECMC Exhibit C. No payments have been made on this loan.

18. The purpose of the loans owed to TGSLC was for Plaintiff to attend Brookhaven College. See Exhibit List filed June 27, 2006. TGSLC's exhibits were not admitted into evidence, but because Plaintiff did not contest the debt owed to TGSLC, the exhibit list filed by TGSLC in the record of this case show that Plaintiff owes it the following debt:

    a. Exhibit A: Promissory Note for Federal Stafford Loans payable to BankOne, Irving, Texas 75016, dated May 22, 1996 in the principal amount of $7,500;

    b. Exhibit B: Promissory Note for Federal Stafford Loans payable to BankOne, Irving, Texas 75016, dated May 31, 1995 in the principal amount of $7,500; and

    c. Exhibit C: Promissory Note for Federal Stafford Loans payable to BankOne, Irving, Texas 75016, dated June 6, 1994 in the principal amount of $6,625.

Plaintiff did not contest that she has not made any payments on these debts.

19. Plaintiff testified that she did not apply to repay the debt through the William D. Ford Federal Direct Loan Program, a federal program with repayment plans available to address various repayment needs. Plaintiff testified that she did not apply to the Ford program because it imposes a 25 year burden of payments, she was not sure if all of her loans qualified for the program, and if she should ever have a change in life, such as a marriage, she did not want to saddle the future husband with repayment.

20. The student loan debt at issue are all "Stafford" loans and are subject to repayment through the Ford program.

## Conclusions of Law

1. The applicable Bankruptcy Code section is 11 U.S.C. § 523(a)(8) which provides that "[a] discharge does not discharge an individual debtor from any debt--(8) for an educational

benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependants; . . ..''

2. In Brunner v. New York State Higher Educ. Serv. Corp., 831 F.2d 395, 396 (2d Cir.1987), the Second Circuit articulated a test by which to evaluate the undue hardship determination. The Fifth Circuit, noting that the Brunner test had been the most widely-adopted test for entitlement to a hardship discharge, specifically adopted this test when evaluating a § 523(a)(8) "undue hardship" cause of action. See United States Department of Education v. Gerhardt (In re Gerhardt), 348 F.3d 89, 91 (5th Cir.2003) (noting that the 3d, 4th, 7th, 9th, and 11th Circuits had adopted the Brunner test). The Fifth Circuit reiterated the Brunner test as follows:

> To justify discharging the debtor's student loans, the Brunner test requires a three-part showing:
> (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for [himself] and [his] dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.

In re Gerhardt, 348 F.3d at 91 (citing Brunner, 831 F.2d at 396); see also, Tollison v. Suntech, Inc. (In re Tollison), 305 B.R. 656, 660 (Bankr. N.D. Miss. 2004) (same).

3. "In a § 523(a)(8) cause of action, both the creditor and the debtor have respective burdens of proof." In re Tollison, 305 B.R. at 660. "The creditor has the initial burden of establishing the following: (1) the existence of a debt; (2) made for an educational loan; (3) made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution." Id. "If the creditor meets this burden, the debtor must then prove that excepting the debt from discharge will impose an undue hardship." Id.

4. Here, there are no factual disputes that these loans meet the required debt factors, thus, Defendants have, in effect, met their burden.

5. Plaintiff then must prove that her circumstances are such that she should receive a discharge of the debt under the three prongs of the Brunner/Gerhardt test.

6

6. Given the evidence presented here, the Court will begin its analysis with the first prong, then second prong, then third prong of Brunner/Gerhardt test.

First Prong of Brunner/Gerhardt

Plaintiff provided testimony and evidence that she cannot pay now the debt at issue. She has no income, other than from governmental assistance programs, and the Social Security child's benefit to be used to support her child. The Plaintiff provided evidence, which Defendants did not challenge, that her monthly income is below the poverty level for a household of two persons. Plaintiff has met the factor of showing that she cannot maintain, based on current income and expenses, a "minimal" standard of living if required to repay the student loan debts at issue.

Second Prong of Brunner/Gerhardt

Plaintiff must show that "additional circumstances exist" which indicate the state of her financial affairs is likely to persist for a "significant portion of the repayment period of the student loans." The repayment period of these loans is indefinite, given the unilateral and retroactive annulment of the statute of limitations applicable to collection of this type of debt, see 20 U.S.C. §1091a(a)(2). According to Gerhardt, this second prong of the test is "meant to be 'a demanding requirement.'" Gerhardt, 348 F.3d at 92. In fact, "proving that the debtor 'is currently in financial straits' is not enough. Instead, the debtor must specifically prove 'a total incapacity . . . in the future to pay [his] debts for reasons not within [his] control.'" Id. The Fifth Circuit then lists some examples of "additional circumstances" showing this "total incapacity" to pay debts, including "'psychiatric problems, lack of usable job skills, and severely limited education.'" Id. at n.2 (quoting In re Roach, 288 B.R. 437, 445 (Bankr. E.D. La. 2003)).

Here, Plaintiff Jones has shown herself to be educated and well-spoken. Considering that Plaintiff has not been formally trained in legal proceedings, she presented her claims at trial in a very organized manner, with supporting documentation, and made a good presentation of her position. She has shown perseverance in her pursuit of a higher level of education, being a single mother on extremely limited funds. Also, her poor financial situation may continue. The evidence shows her chosen field of nursing may not be the best career for her to obtain gainful employment: 1) a job in nursing requires a knowledge of math and anatomy and physiology, academic areas in which she testified she has difficulty; and 2) she will be approximately 50

years old if she completes the nursing program as contemplated, not leaving a many years of work before retirement age, or, consequently, many years to repay any debt incurred during the nursing program.

In any event, Plaintiff has not shown herself to be "more" than in financial straits, that she has any of the "additional" limitations noted in Gerhardt to prevent repayment of the debt: continuing mental problems, lack of usable job skills, or a severely limited education. Her testimony showed that, prior to getting married and having a child, Plaintiff was able to obtain what was an entry level job and, through her good work skills, move upward in the employer's management hierarchy to attain a job with more responsibilities. Plaintiff fails to meet this second prong of the test that she has a total incapacity to repay the debt owed to Defendants.

Third Prong of Brunner/Gerhardt.

Plaintiff must show that she has made a good faith effort to repay her debt. It was uncontradicted that Plaintiff has made no payments on any of the loans. However, it is not evidence of bad faith for a debtor to have not made payments on a debt if the person had no money with which to make the payments. There was evidence that, since 1999, Plaintiff has a reasonable explanation for not working: marriage, the birth of a child, followed by a lengthy and acrimonious divorce. However, there was evidence that Plaintiff had not sufficiently explored the ability to secure repayment help through the William D. Ford Federal Direct Loan Program, a program that might help her, although she had no legal obligation to apply to such a program.[1] Plaintiff testified that she did not pursue the Ford program because of the 25-year burden of payments, she was not sure if all of her loans qualified for the program, and if she should ever have a change in life, such as a marriage, she did not want to saddle the future husband with repayment. The Court determines that the facts established show Plaintiff did not make a good faith effort to repay her loans.

---

[1] The William D. Ford Direct Loan Consolidation Program is a federal program with four repayment plans available to address various repayment needs of Stafford loans. One of these options is called the Income Contingent Repayment Plan (ICMP), found at 34 C.F.R § 685.208. In § 685.208(a)(1) for Repayment Plans, this regulation states in general that "[a] borrower may repay a Direct Subsidized Loan, a Direct Unsubsidized Loan, a Direct Subsidized Consolidation Loan, or a Direct Unsubsidized Consolidation Loan under . . . the income contingent repayment plan." The ICMP is described in 34 C.F.R. § 685.208(f). In general, the ICMP provides that a borrower's net disposable income, total amount borrowed, and family size will be considered in determining a monthly repayment amount. When a borrower's income falls under the poverty level, there is no payment required, and, at the end of 25 years, any amounts that may remain due and owing on the loan are forgiven.

Because Plaintiff did not meet the second or third requirements of the Brunner/Gerhardt test, Plaintiff will not receive a discharge of the student loan debt at issue. Thus, Plaintiff remains liable to pay the debt owed to ECMC and to TGSLC.

A judgment consistent with this Memorandum Opinion will be entered of even date herewith.

# # #